## Williams *v.* Philadelphia Transportation Company, Appellant.

Argued May 5, 1964. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James Conwell Welsh,* for appellant.

*Morris M. Shuster,* with him *Freedman, Landy and Lorry,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, October 14, 1964:

This intersection collision occurred in daylight on a summer evening, between a bus of appellant, in which appellee-wife was a passenger, and an automobile owned and operated by the co-defendant, Sadie Scott. Appellees, husband and wife, recovered a verdict and judgment against both defendants. Only the Philadelphia Transportation Company appealed.

The bus was proceeding eastwardly on Haverford Avenue and, when crossing Forty-Sixth Street, was struck on the right side by the automobile being driven northbound. The intersection was controlled by three sets of traffic lights.

Appellant, in seeking a new trial, assigns as error statements made by the trial judge during the trial and in the charge to the jury. The scope of our review is to determine whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. *Nelson v. Barclay*

*Motors,* 414 Pa. 633, 202 A. 2d 48 (1964); *Chambers v. Montgomery,* 411 Pa. 339, 192 A. 2d 355 (1963).

During the cross-examination of the defendant Sadie Scott by counsel for defendant Transportation Company, the following colloquy occurred: "THE COURT: It seems perfectly obvious to me, gentlemen, that none of us has seemed to have grasped the point that the witness was not asked when she was giving the statement to the investigator of the Philadelphia Transportation Company the identical questions that she is being asked today, and it is obvious that there will be a difference between what she said on the stand and what she said not under oath to an investigator who is asking the particular questions. She is bound by her testimony under oath. If she made prior inconsistent statements, she owes a duty to explain it, but I see nothing inconsistent in this statement. MR. SHUSTER [Attorney for Appellee]: If that be the case, sir, I withdraw my objection. MR. GOLDSBOROUGH [Attorney for Miss Scott]: I withdraw my objection also. MR. WELSH [Attorney for PTC]: Do I understand you see nothing inconsistent to the part I have read to the witness? THE COURT: If you think there is, you will have an opportunity to say so to the jury when it comes to that stage of the case. In my opinion, there is nothing inconsistent because I know how those statements are taken and you know how they are taken. A question is asked and answers given, then that particular answer is put down at the right time, and all of the questions and all of the answers are not put down. MR. WELSH: While we are on this, may I have a discussion on the record with the Court without the hearing of the jury? May I have argument on this point outside of the hearing of the jury? THE COURT: No, you may not."

The next day counsel for the Transportation Company moved for the withdrawal of a juror, which was denied.

About a week after the accident an investigator for the Transportation Company called on Miss Scott and she gave a statement. The investigator, about the same time, interviewed the plaintiff, Mrs. Madeleyne Williams. The statement was written by the investigator in narrative form from information given to him by Mrs. Williams. The statement was signed in two places, at the bottom of the first page and on the back of the sheet of paper. Mrs. Williams admitted the signature as hers on the back page but either denied or didn't admit the signature on the front page.

Appellant called an examiner of disputed writings and documents who qualified as an expert. He testified that, in his opinion, the signatures were written by the same person.

Appellees called a lawyer who had represented a claimant against appellant, in a claim growing out of the same accident in an arbitration proceedings in county court. The evidence was elicited to contradict some testimony of the bus operator in connection with the accident. The lawyer for the appellant in the same arbitration hearing was in the courtroom but was not called to refute the testimony of the claimant's lawyer in the arbitration case.

Appellant contends that the trial judge should not have expressed his opinion of the statement of Miss Scott and how those statements are taken by investigators. The judge's remarks were made to counsel and within the hearing of the jury during the course of his ruling on evidence. There had been extensive cross-examination of Miss Scott based on her statement which was a narrative of part of the event and her testimony in answer to questions during the trial. The court expressed its opinion as the reason for ruling as it did. The trial judge is charged with the responsibility of the proper conduct of a trial and must of necessity have reposed in him wide discretion to

hold within bounds the examination and cross-examination of parties and witnesses. Experienced trial judges often apply restraint on counsel by a remark or opinion in the course of ruling on questions and thus prevent a deviation from a proper line of examination. It also serves the purpose of indicating to counsel when the subject is exhausted and further cross-examination is a tedious waste of time. The record indicates a fairly extended examination of the co-defendant, Miss Scott.

The court did not foreclose the question of inconsistency with the jury, as counsel was told if he thought there was anything inconsistent "you will have an opportunity to say so to the jury when it comes to that stage of the case." There was no prejudicial error or abuse of judicial discretion by the court in this respect. Further, the contention of appellant of error by the court in the colloquy with counsel about the manner of giving a statement to the appellant's investigator by Miss Scott is without merit. The portion of the statement used was a statement by Miss Scott relating to the operation of her car on 46th Street immediately before the collision, and her speed and view of the bus. The statement was not in question and answer form, as was the cross-examination, and it was obvious, as the court observed, that the questions being asked in the trial were not the same as those asked by the investigator during the interview. While the court said it saw nothing inconsistent counsel was told he could say so to the jury if he thought there was any inconsistency. This was not error.

The court, in charging the jury with respect to the expert testimony on signatures said: "Well, you will have those exhibits out with you and you will have to determine whether or not they are and, if you do, you will have to determine the importance you

give to those signatures. But I examined those signatures, and I am not by any means an expert, and this, *I caution you, is only my view and is in no way binding upon you,* but you take those signatures and you look at them, and if you can see any similarity in them, then you have a perception that is certainly far beyond mine.

"However, I could very well be wrong, and it is quite possible that I am wrong. *In any event, my view is certainly not binding upon you and don't be guided by that at all,* but it is my right and my duty to give you my personal view, *provided at the same time I instruct you—and I have instructed you and I so instruct you again—you are not bound by my view at all; you are bound only by your own view, and you will determine whether or not those signatures were written by one and the same person.*" (Emphasis supplied.) Appellant maintains that the foregoing portion of the charge was error in that the judge expressed his opinion of the genuineness of the signatures. Rather than being erroneous, it was the correct and proper method of charging when the judge undertook to express his opinion. If the court chooses to express an opinion it must be careful and take pains to instruct the jury in a way that will be understood by the members of the jury that the opinion of the Court is in no way binding upon them and that the jury is free to make its own determination. *Guzman v. Bloom,* 413 Pa. 576, 198 A. 2d 499 (1964); *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963).

The next part of the charge that appellant complains of is the following: "And in that connection I shall have to give you another principle of law, well established in the law of Pennsylvania, and that is this: That the testimony of an expert—in this particular feature of the case, a handwriting expert—is mere-

ly an expression of opinion. It adds nothing to the facts. It is an expression of opinion and nothing more, and it is the lowest grade of testimony, where that testimony is contradicted by testimony as to fact. So, having that in mind, you will pass upon the authenticity of the disputed signature on page 1 or on the fact of the statement of Mrs. Williams, as it will be handed to the jury, as prepared by Mr. Burns [the investigator]." This is a correct statement of the law. If counsel was not satisfied with it as given a request should have been made for additional instruction. *Lewis v. Pittsburgh Rwys. Co.,* 386 Pa. 490, 126 A. 2d 454 (1956).

And finally as to the charge, appellant complains about the following: "Then there is a still further principle of law which becomes applicable in the situation presented, and that is this: That where there is a witness available who would be expected to have a knowledge of facts one way or another, and that witness is not called by the party to whom that witness is available, the fact finding body—in this case, the jurors—would be warranted in drawing an inference that the witness was not called because his testimony would not be helpful to the person who failed to call him, or to the litigant who failed to call him.

"Now it was established that the member of the Philadelphia Bar who was representing the transportation company in July of 1959 when the hearing before the arbitrators was held, representing the company in that issue, was in court during at least the last day of the trial, and he was not called to contradict the testimony of Mr. Poplow, the lawyer who read from his memorandum. So therefore, you would be warranted in inferring that if he had been called his testimony would not have been favorable to the transportation company."

At the conclusion of the charge the following colloquy is recorded: "MR. WELSH: Secondly, your Honor, despite what your Honor has said on several occasions, you made a reference in your charge, sir, to the availability of witnesses, and I would say that you said, and I believe I quote you correctly, sir, that a witness who is available and who is expected to have knowledge and is not called, you can conclude that it might be unfavorable. I don't think that is the law, 'who might be expected to have knowledge', sir. I think 'one who would have to have knowledge.' That is the first point.

"Secondly, no matter whether you say either did or is expected to have, I think you could also and you must instruct the jury that this witness, who does not now work for the Philadelphia Transportation Company, was available both to the plaintiff and to the other defendant as well as to me and, therefore, in saying what you did, it might create an impression that your Honor would not wish to create. THE COURT: Well, it was not made known to me and it is not in the record that he is not presently an employee of the Philadelphia Transportation Company, but the fact does appear by the positive sworn testimony of the lawyer who took the stand that the gentleman in question was in court and he was present at the arbitration hearing before the arbitrators of the municipal court, and then and there acted on behalf of the Philadelphia Transportation Company. MR. WELSH: That part is correct, sir. That, I admit under all conditions, but I do not think it proper, I think it is prejudicial, sir, to say that he was available only to me, because he was available to all parties, sir. THE COURT: That is all that was in the record before me, Mr. Welsh. MR. WELSH: There is no evidence in the record, sir, that he had any knowledge as of today.

THE COURT: The only evidence on the record is to the effect that he was present and he is not shown to have been disabled by lack of seeing or hearing or speech, that, presumably, he knew as much as the other lawyer knew."

In the circumstances this was not reversible error. The better practice, in order to eliminate any doubt or misunderstanding in a situation such as occurred here is to call the witness and avoid the imposition of the rule: "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him. . . .": *Wills v. Hardcastle,* 19 Pa. Superior Ct. 525, at p. 529 (1902), and quoted with approval in *Haas v. Kasnot,* 371 Pa. 580, 584-585, 92 A. 2d 171 (1952). Otherwise it is proper for the Court to instruct the jury as above set out.

Appellant complains that the trial judge dramatized and magnified the immaterial inconsistencies of defendant's witnesses and stated he found nothing inconsistent in plaintiff's and co-defendant's allegedly material contradictions. We have carefully examined the record, including the charge, and cannot agree with appellant's evaluation of the conduct of the trial. We find no clear abuse of discretion or error of law such as could control the outcome of the case.

Judgments affirmed.

Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

Mr. Chief Justice BELL and Mr. Justice JONES dissent.